IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INLAND STEEL COMPANY, ) | |
| ) | Civil Action No.: 91-C-4451 |
| Plaintiff, ) | |
| ) | Judge George W. Lindberg |
| v. ) | |
| ) | Magistrate Judge Michael T. Mason |
| ) | |
| LTV STEEL COMPANY, INC., and ) | |
| USX CORPORATION, ) | |
| ) | |
| Defendants. ) | |

To: Jonathan S. Quinn, Esq.
Sachnoff & Weaver
30 South Wacker Drive
29th Floor
Chicago IL 60606-7484
Attorney for Inland Steel Company
(now known as Ispat Inland Inc.)

**DEFENDANT USX CORPORATION'S MOTION FOR AN AWARD OF ATTORNEY FEES AND SUPPORTING MEMORANDUM**



# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

PROCEDURAL HISTORY OF THIS CASE .................................................................... 2

THE SUBJECT MATTER OF THIS CASE AND BASIS FOR THIS MOTION .......... 3

ARGUMENT .......................................................................................................................... 7

I.    INEQUITABLE CONDUCT INCLUDES AFFIRMATIVE MISREPRESENTATIONS OF FACTS AS WELL AS FAILURE TO DISCLOSE MATERIAL PRIOR ART .......... 7

II.   INLAND'S AFFIRMATIVE MISSTATEMENTS OF FACTS AS WELL AS ITS FAILURE TO DISCLOSE MATERIAL PRIOR ART CONSTITUTE INDEPENDENT ACTS OF INEQUITABLE CONDUCT ................................................................. 8

    A. Inland Repeatedly Misrepresented That The Steels Disclosed In The Prior Art Irie Patent Would Not Have Resistance To Internal Oxidation ............................................. 8

    B. Inland Repeatedly Misrepresented That The Claimed Amount Of Antimony (0.02 wt.%) Was Critical ......................................................................... 11

    C. Inland Misrepresented The State Of The Art In Its Failure To Disclose The Rastogi Patents And In Its Statements About Those Patents ................................................... 12

III.  THIS IS AN EXCEPTIONAL CASE UNDER § 285 ............................................. 14

CONCLUSION ..................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

Abbott v. Coe, 109 F.2d 449 (D.C. Cir. 1939) .................................................................. 11

Ex parte Inland Steel Company, Appeal No. 1997-0208, PTO Board of Appeals,
  dated September 21, 1999 ....................................................................................... passim

FMC Corp. v. Manitowoc Co., 835 F.2d 1411 (Fed. Cir. 1987) ......................................... 7

Gilbreth Int'l Corp. v. Lionel Leisure, Inc., 587 F. Supp. 605 (E.D. Pa. 1983) ............... 14

In re Inland Steel Company, Appeal No. 00-1143, 60 USPQ2d 1396
  (Fed Cir. 2001) ......................................................................................................... passim

J.P. Stevens & Co. v. Lex Tex, Ltd., 747 F.2d 1553 (Fed. Cir. 1984), cert. denied,
  474 U.S. 822 (1985) ..................................................................................................... 7, 8

Kansas Jack, Inc. v. Kuhn, 719 F.2d 1144 (Fed. Cir. 1983) ............................................... 8

Mathis v. Spears, 857 F.2d 749 (Fed. Cir. 1988) ............................................................. 14

Molins PLC v. Textron, Inc., 48 F.3d 1172 (Fed. Cir. 1995) .......................................... 7, 8

Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc., 182 F.3d 1356 (Fed. Cir. 1999) ....... 14

Rohm & Haas Co. v. Crystal Chemical Co., 722 F.2d 1556 (Fed. Cir. 1983) ................... 8

Ruiz v. A.B. Chance Co., 234 F.3d 654 (Fed. Cir. 2000) ................................................. 14

Techimark, Inc. v. Crellin, Inc., 14 F. Supp. 2d 762 (M.D.N.C. 1998) ........................... 14

**Statutes**

35 U.S.C. § 285 .......................................................................................................... passim

37 C.F.R. § 1.56 .................................................................................................................. 7

**Other Authorities**

Black's Law Dictionary at 810 (6th ed. 1990) ................................................................... 8

## INTRODUCTION

Defendant USX Corporation ("USX") brings this motion seeking an award of attorney fees under 35 U.S.C. § 285. USX's request for attorney fees is based on plaintiff Inland Steel Company's ("Inland") commission of inequitable conduct in the procurement of the two Inland patents that were at issue in this litigation.[1] This case has been stayed for the past seven years pending reexamination of the Inland patents. All of the claims of both of the Inland patents have been cancelled, or invalidated, by the U.S. Patent and Trademark Office ("PTO") in reexamination proceedings.[2] On June 18, 2002, the PTO issued the final reexamination certificate for the two patents, which concluded the reexamination proceedings. Accordingly, USX now brings this motion seeking an award of attorney fees with respect to the litigation involving the Inland patents.[3]

This case satisfies the exceptional case standard under 35 U.S.C. § 285 because, absent Inland's commission of inequitable conduct through misrepresentations of facts and withholding of key prior art, the PTO never would have issued the Inland patents, and USX would not have been forced to expend significant sums of money to defend itself in this litigation. The factual findings of the PTO in the reexamination, which were either not appealed by Inland, or were affirmed on appeal by both the PTO Board of Appeals and the Federal Circuit, provide a basis in the current record for a finding of inequitable conduct and an award of

---

[1] Ex. A, U.S. Patent No. 4,421,574 ("the '574 patent") and Ex. B, U.S. Patent No. 4,483,723 ("the '723 patent")(collectively "the Inland patents" or "the patents in suit"). References ("Ex. __") are to the Collection of Exhibits Referenced In Defendant USX Corporation's Motions For Entry of Judgment and Award of Attorney Fees, filed concurrently herewith.

[2] Ex. C, Reexamination Certificate in '574 patent; Ex. D, Reexamination Certificate in '723 patent.

[3] In a concurrently filed motion, USX seeks entry of a judgment on USX's counterclaim for patent invalidity and an award of costs.

1

attorney fees.[4] USX submits that this Court should enter an order finding that this case is an exceptional case under the standards of 35 U.S.C. § 285 and award attorney fees based on the record currently before the Court, without the need for further discovery or an evidentiary hearing.

## PROCEDURAL HISTORY OF THIS CASE

This litigation was initiated by Inland in this Court in 1991 based on two related patents.[5] In 1993, the case was trifurcated, with a trial of the patent infringement claims to precede trials on the issues of patent validity and damages.[6] Following a jury trial on the infringement issues, and prior to filing of any post-trial motions, this Court stayed the case pending resolution of reexamination proceedings in the PTO by dismissal of the case with leave to reinstate.[7]

In the reexamination proceedings, the PTO Examiner determined that all of the claims of the Inland patents were invalid. Inland chose to appeal the decision of the Examiner only with regard to the '574 patent. The decision of the Examiner was affirmed by the PTO Board of Appeals, and then, more recently, by the Court of Appeals for the Federal Circuit.[8] Following the decision of the Federal Circuit, the reexamination proceedings were sent back to

---

[4] Ex. E, Opinion of the PTO Board of Patent Appeals and Interferences in *Ex parte Inland Steel Company,* Appeal No. 1997-0208, dated September 21, 1999 (hereinafter "PTO Board Opinion"); Ex. F, *In re Inland Steel Company,* Appeal No. 00-1143, 60 USPQ2d 1396 (Fed Cir. 2001)(hereinafter "Federal Circuit Opinion").

[5] Ex. G, Complaint in Civil Action No. 91-C-4451; Ex. H, Answer, Affirmative Defenses and Counterclaim in Civil Action No. 91-C-4451; Ex. I, Plaintiff's Answer to Counterclaim; Ex. J, Amended Answer, Affirmative Defenses and Counterclaim; Ex. K, Plaintiff's Answer to Amended Counterclaim.

[6] Ex. M, Inland Brief in Federal Circuit, p. 19.

[7] Ex. L, Order of Dismissal With Leave to Reinstate; Ex. F, Fed. Cir. Opinion, p. 2 ("the district court stayed further proceedings pending the outcome of the reexamination proceeding"); Ex. M, Inland Brief in Federal Circuit, p. vii, 19.

[8] Ex. F, Fed. Cir. Opinion, p. 2; Ex. E, PTO Board Opinion, p. 29.

2

the PTO for the Examiner to issue a final reexamination certificate that cancelled all of the claims of the remaining Inland patent. The final reexamination certificate issued on June 18, 2002, which concluded the reexamination proceedings.[9] The case is now ripe for return to this Court for entry of a judgment on behalf of USX and consideration of USX's motion for attorney fees.

## THE SUBJECT MATTER OF THIS CASE AND BASIS FOR THIS MOTION

The Inland patents at issue in this case involve electrical steels.[10] Electrical steels are steels that have the necessary magnetic properties for use in products such as electric motors and transformers.[11] The Inland patents claim the addition of the alloying element antimony to electrical steel to prevent, or suppress, the formation of internal oxidation during the processing of the steel.[12] Formation of internal oxidation adversely affects the magnetic properties of the steel when used in an electric motor.[13] Thus, an alloy addition of an element such as antimony that prevents or suppresses internal oxidation would be beneficial to producers of electrical steel.

For many years prior to the filing of the application for the Inland patents, steel producers, including Inland, made many tons of electrical steel in conformance with the precise composition limitations and processing parameters later recited in the claims of the Inland patents, with the sole exception of the addition of antimony.[14] Additionally, one steel producer, Kawasaki Steel Corporation ("Kawasaki"), advocated the addition of small amounts of antimony

---

[9] Ex. C, Reexamination Certificate for the '574 patent.

[10] Ex. E, PTO Board Opinion, p. 8; Ex. F, Fed. Cir. Opinion, p. 3.

[11] Ex. E, PTO Board Opinion, p. 9; Ex. F, Fed. Cir. Opinion, p. 2.

[12] External or surface oxidation of iron is what is commonly known as rust. Internal oxidation is a formation of oxides of silicon and aluminum within the steel bar or beneath the surface. Ex. E, PTO Board Opinion, p. 9; Ex. F, Fed. Cir. Opinion, p. 3.

[13] Ex. F, Fed. Cir. Opinion, p. 3.

[14] Ex. F, Fed. Cir. Opinion, p. 3; Ex. N, Appendix in Fed. Cir. Appeal, p. A2509-2511.

3

and added antimony to its own commercial electrical steels.[15] Specifically, Kawasaki had discovered that the addition of antimony *necessarily improved* the magnetic properties of electrical steel through various mechanisms.[16] As the PTO Board found, and Inland finally, albeit reluctantly, admitted in July 2000 in its Reply Brief in the Federal Circuit, those mechanisms *necessarily* included resistance to internal oxidation.[17]

Notwithstanding the well-known effects of antimony on electrical steels, Inland filed a patent application on September 8, 1981, naming Grigory Lyudkovsky ("Lyudkovsky") as the inventor of a steel-making method that consisted of adding specified amounts of antimony to steel otherwise produced in accordance with conventional composition and processing techniques employed by Inland.[18] That application resulted in the eventual issuance of the '574 patent and the '723 patent, and this litigation.

Unbeknownst to the PTO when it originally granted the '574 and the '723 patents was that Inland's so-called discovery of the effect of antimony was the result of a *replication* by Grigory Lyudkovsky of Kawasaki's own prior art patent to Irie ("the Irie patent").[19] Lyudkovsky's research memoranda, which were supplied to the PTO by USX in the reexaminations that resulted in the invalidation of the Inland patents, detail this replication and acknowledge that Kawasaki pioneered the concept of adding antimony to improve magnetic properties in electrical steels.[20]

---

[15] Ex. R, First Office Action in Reexamination, p. 19-56.

[16] Ex. R, First Office Action, p. 19-56; Ex. M, Inland Brief in Fed. Cir., p. 12.

[17] Ex. E, PTO Board Opinion, p. 12, 19-22; Ex. O, Inland Reply Brief in Fed. Cir., p. 12.

[18] Ex. A, the '574 patent; Ex. B, the '723 patent.

[19] Ex. T, Final Action in Reexamination, p. 89; Ex. M, Inland Brief in Fed. Cir., p. 15-17.

[20] Ex. T, Final Action, p. 89; Ex. V, Declaration of Grigory Lyudkovsky ("Lyudkovsky Decl.") ¶¶12-17, ¶67, ¶68; Ex. N, Appendix in Fed. Cir. Appeal, p. A2515-A2520. Until he was confronted with his own research reports that demonstrated that his work was actually a replication of the prior work of Kawasaki, Lyudkovsky maintained under oath that he first "discovered" the potential of antimony when

4

Therefore, in order to obtain its own patent on what had been previously patented by Kawasaki, Inland made a number of incorrect, or false, representations about the teachings of the prior art Irie patent. In a variety of submissions to the PTO in the original prosecution and in the reexaminations, Inland repeatedly told the PTO that that the antimony-containing steels of the Irie patent would not be resistant to internal oxidation. Of course, Inland knew these statements were not correct and admitted as much in the Federal Circuit appeal when it stated that suppression of internal oxidation is "necessarily present" in Irie's steel by the employment of antimony.[21] Those misstatements about the Irie patent form a first basis for finding this case to be an exceptional case.

Inland's pattern of deception about the Irie patent also included misrepresentations about the critical amount of antimony necessary to inhibit internal oxidation. Inland represented to the PTO that addition of the *amount* of antimony in the particular ranges claimed in the '574 patent is "critical" to obtain resistance to internal oxidation.[22] However, as confirmed by the findings of the PTO Examiner, Lyudkovsky's own research reports did not support this representation, but came to a different conclusion about the critical amount of antimony than what was being told by Inland to the PTO.[23] Both the PTO Board and the Federal Circuit expressly addressed, and affirmed, the PTO Examiner's findings regarding Lyudkovsky's

---

he "physically stumbled over a chunk" of antimony while walking through the galvanizing shop at Inland, and he took the "chunk of antimony" and kept it in the trunk of his Cutlass Supreme automobile to get better traction during winter driving. Ex. W, Lyudkovsky Deposition, p. 182-187. Lyudkovsky omitted discussion of this serendipitous event from a narrative about his work provided to the PTO in the reexamination. Ex. V, Lyudkovsky Declaration, ¶¶6-65.

[21] Ex. O, Inland Reply Brief in Fed. Cir., p. 12.

[22] Ex. F, Fed. Cir. Opinion, p. 14-17.

[23] Ex. T, Final Office Action, p. 57-63.

5

research reports and the declaration submitted by Lyudkovsky during the reexamination.[24] Inland's misstatements about the critical amount of antimony form a second basis for finding this case to be an exceptional case.

Another part of Inland's pattern of deception was its effort to convince the PTO that the steels claimed in the '574 and '723 patents were somehow different from conventional steels (other than the addition of a small amount of antimony). In this regard, Inland failed to disclose its own prior art patents ("the Rastogi patents") in the original prosecution history that were ultimately relied upon by the PTO in invalidating the Inland patents in the reexaminations. The PTO Board concluded that Inland's own Rastogi patents are "clearly the most relevant applied prior art references" with respect to the specific processing operations required by the appealed claims.[25] The Examiner and PTO Board both found that the Rastogi patents, which describe Inland's own prior art steels, essentially meet the compositional limitations of the appealed claims, and the claimed process steps are "identically taught and exemplified by Rastogi."[26] The Federal Circuit agreed, and noted Inland's belated concession of the same during the appeal.[27] Inland's failure to disclose the Rastogi patents, and its misstatements about their teachings, form a third basis for finding this case to be an exceptional case.

---

[24] Ex. E, PTO Board Opinion, p. 24-27; Ex. F, Fed. Cir. Opinion, p. 15-16.
[25] Ex. E, PTO Board Opinion, p. 7.
[26] Ex. E, PTO Board Opinion, p. 11-12.
[27] Ex. F, Fed. Cir. Opinion, p. 5.

6

## ARGUMENT

### I. INEQUITABLE CONDUCT INCLUDES AFFIRMATIVE MISREPRESENTATIONS OF FACTS AS WELL AS FAILURE TO DISCLOSE MATERIAL PRIOR ART

Applicants for patents are required to prosecute patent applications in the PTO with candor, good faith, and honesty. *See FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1415 n.8 (Fed. Cir. 1987). A breach of this duty constitutes inequitable conduct.

Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995); *J.P. Stevens & Co. v. Lex Tex, Ltd.*, 747 F.2d 1553, 1559 (Fed. Cir. 1984), *cert. denied*, 474 U.S. 822 (1985). Material information is defined in 37 C.F.R. § 1.56 to include information that refutes, *or is inconsistent with,* a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the PTO, or (ii) asserting an argument of patentability. 37 C.F.R. § 1.56 (1992)(emphasis added).

The Federal Circuit has held that the result of a PTO proceeding that assesses patentability in light of information not originally disclosed can be of strong probative value in determining whether the undisclosed information was material. *See J.P. Stevens*, 747 F.2d at 1562 (reasonable rejection of claims in reliance on a reference during reissue proceeding established materiality of that reference)(cited in *Molins*, 48 F.3d at 1179). Therefore, the findings of the PTO in the reexamination relating to the statements of Inland regarding (1) the Irie patent, (2) the critical amount of antimony, and (3) the contents of the non-disclosed Rastogi patents, are strong evidence of materiality here.

"Intent" commonly means: "[d]esign, resolve, or determination with which [a] person acts[; a] state of mind in which a person seeks to accomplish a given result through a

7

course of action." *Molins*, 48 F.3d at 1180, citing Black's Law Dictionary at 810 (6th ed. 1990). Intent need not be proven by direct evidence; it is most often proven by a showing of acts, the natural consequences of which are presumably intended by the actor. *Id.*; *Kansas Jack, Inc. v. Kuhn*, 719 F.2d 1144, 1151 (Fed. Cir. 1983). Here, Inland's clear intent to mislead the PTO is found in the numerous misstatements of fact made in submissions to the PTO, including sworn declarations, as well as in the natural consequences of its failure to disclose the most relevant prior art -- its very own prior art Rastogi patents. *See Rohm & Haas Co. v. Crystal Chemical Co.*, 722 F.2d 1556, 1569 (Fed. Cir. 1983)(submission of false affidavits that omitted test data were found to constitute material misrepresentations).

## II. INLAND'S AFFIRMATIVE MISSTATEMENTS OF FACTS AS WELL AS ITS FAILURE TO DISCLOSE MATERIAL PRIOR ART CONSTITUTE INDEPENDENT ACTS OF INEQUITABLE CONDUCT

USX presents three independent acts of inequitable conduct by Inland or three separate bases for a finding that this is an exceptional case under 35 U.S.C. § 285. In each instance, the misstatements as well as the withholding of prior art reach the highest level of materiality, and were clearly done with intent to deceive.[28]

### A. Inland Repeatedly Misrepresented That The Steels Disclosed In The Prior Art Irie Patent Would Not Have Resistance To Internal Oxidation

In the original prosecution of the Inland patents, and throughout the reexamination proceedings, Inland expressly and repeatedly told the PTO that the steels described in the prior art Irie patent would not have the claimed effect on suppression of internal oxidation. For example, Inland told the PTO that certain processing steps, including surface cleaning of the steel, would *prevent* the suppression of internal oxidation in the steels of the Irie

---

[28] To avoid repetition, USX has not submitted documents from the largely duplicative record relating to the '723 patent. To the extent the Court desires to have copies of the record from both reexaminations,

8

patent.[29] Specifically, Inland told the PTO that the steel of the Irie patent "does not and cannot have" the claimed resistance to internal oxidation.[30]

These statements were repeated throughout hundreds of pages of submissions, including the declaration of the inventor Lyudkovsky.[31] In an 80 page declaration, Lyudkovsky repeatedly told the PTO that the steel of the Irie patent would not exhibit suppression of internal oxidation: see, e.g., ¶16 (certain statements in the Irie patent "clearly and convincingly" refute that Kawasaki knew that antimony reduced internal oxidation in electrical steels); ¶63, ¶65 (suppression of internal oxidation not obtained by Irie); ¶76-¶79 (suppression of internal oxidation not inherent, or not necessarily present, in Irie patent).[32] Inland also filed a declaration of one of its experts, Dr. Robert Judd, with statements to the same effect: see, e.g., ¶79 (Judd did not observe any reduction in internal oxidation in his testing of Irie-type antimony containing steels).[33]

In its Response to the First Office Action in the reexamination, Inland advised the PTO that adding antimony as taught in Irie will *not* necessarily decrease internal oxidation;[34] that "one searches the prior art in vain" for a disclosure by Kawasaki that "even remotely suggest[s] that antimony might inhibit internal oxidation" but "finds strong evidence that researchers of such *high* skill were oblivious to such a possibility;[35] and, that Irie does *not* recognize that employing antimony without certain other composition and processing parameters "will produce

---

USX will supplement its submissions.

[29] Ex. P, Amendment B in Prosecution History of '723 Patent, p. 3-5; Ex. Q, Suppl. IDS in 1990 Request for Reexamination, p. 2-3.

[30] Ex. P, Amendment B, p. 5.

[31] Ex. S, Response to First Office Action, pp. 29-50, 81-85.

[32] Ex. V, Lyudkovsky Decl. ¶13, ¶16, ¶63, ¶65, ¶76, ¶77, ¶78, ¶79, ¶95.

[33] Ex. X, Declaration of Robert Judd ("Judd Decl.") ¶79.

[34] Ex. S, Response to First Office Action, p. 8.

9

improved magnetic properties *by reducing internal oxidation*."[36] Inland made similar statements about Irie in its Response to the Final Office Action (e.g., "Irie says nothing about internal oxidation")[37] and in its Appeal to the PTO Board of Appeals ("one would not have expected that a part of Irie's antimony range (that part which is 0.02% and above) would reduce internal oxidation of silicon and aluminum, when employed in the method of Rastogi or Easton"; a reduction in internal oxidation "is not inherent in the antimony contents taught by Irie").[38]

The PTO Examiner of the original application accepted Inland's representations and allowed both patents to issue. In the reexamination, however, the PTO Examiner recognized that Inland's statements were false and concluded that the steels of the Irie patent would have the claimed property of suppression of internal oxidation.[39] In fact, the Examiner found that claims 1-8 of the '574 patent were anticipated, or invalid, in view of Irie by itself; a finding that was *not* appealed by Inland.[40] With regard to the remaining rejected claims that were appealed by Inland, the PTO Board and the Federal Circuit agreed with the PTO Examiner's conclusion.[41]

In its Reply Brief before the Federal Circuit, Inland finally conceded that "suppression of internal oxidation is necessarily present even in Irie's non-hot band annealed steel by the employment of antimony."[42] The Examiner's Actions, the PTO Board Opinion and the Federal Circuit Opinion, all confirm that the Inland patents would not have issued "but for" Inland's misstatements about the Irie patent, which constitute the highest level of materiality.

---

[35] Ex. S, Response to First Office Action, p. 64-65 (emphasis in original).

[36] Ex. S, Response to First Office Action, p. 45 (emphasis in original).

[37] Ex. U, Response to Final Office Action, p. 83.

[38] Ex. Y, Inland Appeal Brief to PTO Board, p. 92, 96.

[39] Ex. R, First Office Action in Reexamination, p. 22; Ex. T, Final Office Action in Reexamination, p. 89.

[40] Ex. T, Final Office Action in Reexamination, p. 87-91; Ex. E, PTO Board Opinion, p. 2.

[41] Ex. E, PTO Board Opinion, p. 20, 22 (Irie steels have resistance to internal oxidation), 29; Ex. F, Fed. Cir. Opinion, p. 16.

With regard to intent, one need look no further than Inland's belated admission to the Federal Circuit that its representations of fact about Irie that had been knowingly and repeatedly made over the prior 10 years were simply not true.

### B. Inland Repeatedly Misrepresented That The Claimed Amount Of Antimony (0.02 wt.%) Was Critical

In the original prosecution of the Inland patents, including in the patent specification, and throughout the reexamination proceedings, Inland repeatedly told the PTO that the critical amount of antimony needed to suppress internal oxidation was 0.02 wt.%.[43] These representations formed a major part of Inland's submissions to the PTO in the reexaminations.[44]

The inventor's own research reports, however, came to the contrary conclusion. Based on the inventor's own research reports, the PTO Examiner found that the critical amount of antimony necessary to cause suppression of internal oxidation was *not* 0.02%.[45] The Examiner also concluded that the inventor himself believed 0.02% was *not* the critical amount of antimony.[46] That finding by the PTO was not appealed in the case of the '723 patent; was affirmed as part of the overall affirmance in the appeal of the reexamination of the '574 patent; and, is entitled to great deference. *See Abbott v. Coe*, 109 F.2d 449 (D.C. Cir. 1939)(judgment of PTO on technical issues entitled to "great weight"). The Federal Circuit expressly noted that the PTO discounted the Lyudkovsky declaration and that "much of the data that was before the

---

[42] Ex. O, Inland Reply Brief before Federal Circuit, p. 12.

[43] Ex. A, the '574 Patent, col. 2, lines 21-22, 50-52, 58-59; col. 3, lines 37-43; and, col. 5, lines 32-36; Ex. P, Amendment B in Prosecution History of '723 Patent, p. 3-5; Ex. Q, Suppl. IDS in 1990 Request for Reexamination, p. 2-3..

[44] Ex. S, Response to First Office Action, p. 5-9, 22-26; Ex. U, Response to Final Office Action, p. 24-43; Ex. Y, Inland Appeal Brief to PTO Board, p. 70-92.

[45] Ex. T, Final Office Action, p. 57-63 ("The Examiner's Position With Respect To The Criticality Of 0.02% Antimony").

[46] Ex. T, Final Office Action, p. 59.

11

Board [in the Lyudkovsky declaration] undercuts Inland's assertion that it had established improved performance in the range above 0.02%."[47]

Thus, Inland's repeated representations concerning the criticality of the amount of antimony were contrary to its own research reports and its own understanding of the true facts. Those affirmative misrepresentations were knowingly made with intent to deceive the PTO, and caused the PTO to allow the Inland patents to issue, which constitutes inequitable conduct.

### C. Inland Misrepresented The State Of The Art In Its Failure To Disclose The Rastogi Patents And In Its Statements About Those Patents

Inland also failed to disclose numerous prior art references that were relied upon by the PTO in the reexamination to invalidate the claims of the Inland patents. Of these nondisclosed references, the most important reference was Inland's own prior art Rastogi patents.

The Rastogi patents, which are two separate patents with very similar disclosures, were cited by the PTO Examiner in six separate rejections in the reexamination for their disclosure of all of the limitations of the claims with the exception of the addition of antimony.[48] The high level of materiality of Rastogi is evidenced by the finding of the PTO Board of Appeals that the Rastogi patents are "clearly the most relevant applied prior art references" with respect to the specific processing operations required by the appealed claims.[49]

Inland conveniently neglected to advise the PTO that the Rastogi patents represent Inland's *own* conventional prior art steel practices that were being used to make hundreds of tons of electrical steels in the relevant time frame. In the reexamination, the PTO Examiner declined to make *additional* rejections of the claims based on Inland's own prior art

---

[47] Ex. F, Fed. Cir. Opinion, p. 15-16.

[48] Ex. R, First Office Action, p. 32-33; Ex. T, Final Office Action, p. 20; Ex. E, PTO Board Opinion, p. 6 n.3.

[49] Ex. E, PTO Board Opinion, p. 7.

12

steels because those rejections would be *duplicative* of the rejections based on Rastogi.[50] The inventor, Lyudkovsky, was clearly aware of the teachings of the Rastogi patents as he was fully cognizant of Inland's conventional processes and the compositions of its commercial steels as part of his being intimately involved in research and development of electrical steels at Inland in the relevant time period.[51]

Inland also represented to the PTO in the reexamination that the steels of the Rastogi patents would not provide the claimed composition of the Inland patents in terms of properties such as grain sizes.[52] In this regard, Inland submitted the declaration of its expert witness Robert Judd in which he stated that it is not possible to draw conclusions about the resulting properties of the Rastogi steels with antimony because of the "interactive effects of all of the variables."[53] However, the PTO Board concluded that the Rastogi steel, with antimony, would *necessarily* suppress the formation of internal oxidation and would *necessarily* have the claimed properties, such as grain size.[54] Inland expressly chose *not* to challenge this finding on appeal in the Federal Circuit.[55]

Despite these repeated statements about the lack of relevance of the Rastogi patents, Inland belatedly admitted the high degree of relevance of those prior art patents in its Reply Brief before the Federal Circuit when it stated that the "PTO correctly recognizes that Rastogi teaches all of Inland's claim limitations" with the exception of the addition of antimony.[56] Inland's admission of the high level of materiality of the Rastogi patents that show

---

[50] Ex. T, Final Office Action, p. 149.
[51] Ex. V, Lyudkovsky Decl. ¶2, ¶¶6-10.
[52] Ex. S, Response to First Office Action, p. 99-100
[53] Ex. X, Judd Decl. ¶69-70.
[54] Ex. E, PTO Board Opinion, p. 12-13; Ex. F, Fed. Cir. Opinion, p. 5.
[55] Ex. M, Inland Brief in Fed. Cir., p. 7 n.2.
[56] Ex. O, Inland Reply Brief in Federal Circuit, p. 24; Ex. F, Fed. Cir. Opinion, p. 5.

13

its own prior art steels, coupled with the PTO's reliance on this reference in numerous rejections of the claims, some of which were not even challenged by Inland on appeal, demonstrates the highest level of materiality of the withheld reference. Inland's failure to bring this reference to the attention of the Examiner can only be the result of specific intent on Inland's part to mislead the PTO. Inland's failure to disclose this extremely relevant reference, and its misrepresentation of its teachings, constitutes inequitable conduct.

## III. THIS IS AN EXCEPTIONAL CASE UNDER § 285

Federal courts have recognized that 35 U.S.C. § 285 may be used by the prevailing party in a patent infringement action to recover its attorney fees in certain situations. *See, e.g., Mathis v. Spears*, 857 F.2d 749, 754 (Fed. Cir. 1988). A finding of the commission of inequitable conduct may constitute the basis for an award of attorney fees under 35 U.S.C. § 285. *Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals, Inc.*, 182 F.3d 1356, 1359 (Fed. Cir. 1999); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 669 (Fed. Cir. 2000). Here, USX has provided detailed evidence, based upon the existing record, of three independent acts of inequitable conduct by Inland; acts involving misrepresentations or non-disclosure of prior art of the highest level of materiality and involving intentional misstatements of fact or intentional nondisclosure of the most relevant prior art.

Courts have allowed parties, such as USX here, who successfully challenged the validity of patents before the PTO to return to the district courts to seek attorney fees under 35 U.S.C. § 285. *See Gilbreth Int'l Corp. v. Lionel Leisure, Inc.*, 587 F. Supp. 605 (E.D. Pa. 1983)(district court determined that defendants were entitled to attorney fees and costs after invalidating patent in reexamination); *Techimark, Inc. v. Crellin, Inc.*, 14 F. Supp. 2d 762, 765 (M.D.N.C. 1998)(court retains jurisdiction to determine attorney fees request after patent failed to survive reissue proceedings). USX's motion for attorney fees is based on the existing record

14

in this case. No further discovery is necessary in order to decide whether this is an exceptional case. Recovery of attorney fees expended by USX in defending this litigation is appropriate here.

## CONCLUSION

For the reasons set forth, the Court should find that this was an exceptional case under 35 U.S.C. § 285 and award USX its attorney fees in an amount to be determined.

DATED: August 21, 2002

Respectfully submitted,

USX CORPORATION

By: *Hugh Abrams*

Hugh A. Abrams
Jamie L. Secord
SIDLEY AUSTIN BROWN & WOOD
10 South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Attorneys for Defendant
USX Corporation

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that, on this 21st day of August, 2002, a copy of the foregoing NOTICE OF MOTION was served upon plaintiff, Inland Steel Company (now known as Ispat Inland Inc.), in the manner indicated:

By Messenger

Jonathan S. Quinn, Esq.
Sachnoff & Weaver
30 South Wacker Drive
29th Floor
Chicago IL 60606-7484
Attorney for Inland Steel Company
(now known as Ispat Inland Inc.)

*Hugh Amann*

One of the Attorneys for Defendant
USX Corporation

CH1 2461873v1